IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| 2M RESEARCH SERVICES, LLC, | **Redacted Version** |
| Plaintiff, | |
| v. | Case No. No. 17-1638C |
| THE UNITED STATES OF AMERICA, | Hon. Robert H. Hodges, Jr. |
| Defendant, | |
| and | |
| VISION PLANNING & CONSULTING, LLC, | |
| Defendant-Intervenor. | |

## <u>MOTION FOR LEAVE TO AMEND</u>

Plaintiff 2M Research Services, LLC ("2M") moves this Court for leave to file a Second Amended Complaint. Pursuant to Rule 15, a party may amend its pleading with leave of the Court, which should be "freely" granted if justice requires. Ct. Fed. Cl. R. 15(a)(2). A copy of the proposed Second Amended Complaint is attached.

2M's Second Amended Complaint adds a new Count I based on new information revealed in the Administrative Record disclosing that FEMA arbitrarily and capriciously waived its own competitive range inclusion criteria for eventual awardee Vision Planning & Consulting LLC ("VPC"). 2M previously speculated that VPC's inclusion in the competitive range had been improper and filed a GAO protest on this basis in May of 2017. *See* AR Tab 66. GAO dismissed that protest on the grounds that an agency could include a technically unacceptable offeror in the competitive range and because GAO determined that 2M's complaint on this issue was premature before the award decision was made. AR Tab 68 at AR 2016. GAO invited 2M

1

to submit a protest after award if it became necessary. *Id.* The Administrative Record in this case confirms 2M's original suspicion. The record demonstrates that FEMA: (1) adopted competitive range criteria ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* AR Tabs 15, 16. Had FEMA simply applied its own competitive range criteria and reasonably evaluated VPC's original proposal, 2M would have been the only offeror left standing. Under these circumstances, justice requires that 2M be permitted to amend its complaint to assert this new protest ground.

2M's Second Amended Complaint also removes some protest grounds and arguments based on 2M's review of the Administrative Record. Removal of these items will narrow the issues in this matter and reduce all parties' briefing burdens. The interests of justice also support permitting these amendments.

Respectfully submitted this 12th day of December, 2017.

/s/ Jessica C. Abrahams
DENTONS US LLP
jessica.abrahams@dentons.com
1900 K Street, NW
Washington, District of Columbia 20006
Telephone No.: (202) 496-7500
Facsimile No.: (202) 496-7756
*Counsel for 2M Research Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2017, I electronically filed the foregoing via the Court's CM/ECF system, which automatically generates a notice of filing to all Counsel of Record in this matter.

/s/ Jessica C. Abrahams

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

█████████████████

| | |
|---|---|
| 2M RESEARCH SERVICES, LLC, | |
| Plaintiff, | Case No. No. 17-1638C |
| v. | Hon. Robert H. Hodges, Jr. |
| THE UNITED STATES OF AMERICA, | |
| Defendant, | █████████████████ |
| and | |
| VISION PLANNING & CONSULTING, LLC, | |
| Defendant-Intervenor. | |

### SECOND AMENDED COMPLAINT

Plaintiff 2M Research Services, LLC ("2M") files its Complaint against Defendant the United States of America, acting through the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA").  For its complaint, 2M alleges as follows.

### NATURE OF THE ACTION

1.     This is a bid protest challenging FEMA's irrational and unlawful actions under Solicitation No. HSFE40-16-R-0002 ("RFP" or "Solicitation").

2.     The RFP seeks a contractor to provide technical and administrative support services for competitively awarded grants to fire departments and other organizations.  *See generally* Ex. A, RFP.[1]  FEMA first announced an award to Vision Planning & Consulting, LLC ("VPC") on September 29, 2016, following an evaluation of proposals without discussions or

---

[1] All RFP citations herein refer to the Solicitation as amended and posted on FedBizOpps.gov on June 2, 2016.

revisions.  2M protested that award to the Government Accountability Office ("GAO"), and,

after 2M filed a supplemental protest, FEMA agreed to take corrective action.  This agreed-to

corrective action included determining as a threshold matter whether offerors were in compliance

with Federal Acquisition Regulation ("FAR") 52.219-14, Limitations on Subcontracting, which

was incorporated in the RFP.  Then, assuming VPC's proposal was deemed to be in compliance

with FAR 52.219-14, the corrective action contemplated that FEMA would reevaluate the

aspects of VPC's proposal alleged in the protest to be either unsatisfactory or technically

unacceptable.  *See* Ex. B, Decision, *2M Research Servs., LLC*, B-413993 *et al.*, Dec. 6, 2016,

2017 CPD ¶ 203.  In evaluating 2M's resulting claim for legal fees and costs, GAO concluded

that 2M's protest was meritorious and ruled in favor of 2M on entitlement.  This resulted in a

complete reimbursement of 2M's protest fees and costs.

3.     Despite FEMA's representations to GAO, FEMA ignored the requirements of

FAR 52.219-14, arbitrarily included VPC in the competitive range, allowed VPC to revise its

proposal, and re-awarded the contract to VPC.  FEMA's second award decision again ignored

that VPC has no experience, no staff, and no qualifications for this contract.  This protest is 2M's

challenge to that second award decision.[2]

4.     FEMA's failure to implement the corrective action as represented began when it

re-evaluated offerors' original proposals and established a competitive range.  In spite of the

---

[2] 2M initially filed a protest of the reaward to GAO, which was timely for purposes of the
Competition in Contracting Act ("CICA") stay.  That protest, which was docketed as B-413993.5
was dismissed on October 23, 2017 pursuant to FEMA's motion in which it claimed that 2M's
GAO protest and the protest filed before this Court by Elias Group, LLC (*Elias Group, LLC v.
United States*, No. 1:17-cv-01490-RHH (Fed. Cl. filed Oct. 10, 2017) raised the same issues.  2M
is now refiling its protest with this Court.  In light of FEMA's representation that it would
voluntarily stay the award of the contract at least until January 31, 2018, 2M is not moving at this
time for a preliminary injunction.

overwhelming evidence set forth in 2M's GAO protest that led to the corrective action — and

FEMA's own internal analysis concluding that VPC had violated the limitation on

subcontracting — FEMA included VPC in the competitive range, and █████████████

████████████████████████  Had FEMA ████████████████████████

███████████████  VPC should have been eliminated from the competition, 2M would

have been the only offeror included in the competitive range, and it would have received an

award.

     5.     FEMA's subsequent evaluation of revised proposals remained irrational and

continued to ignore all of VPC's shortcomings.  FEMA inexplicably and irrationally ████████

████████████████████████, even though VPC's lack of experience, qualifications,

and staff meant it could not have ███████████████████████████████

████████████████████████

     6.     In an effort to justify reaward to VPC, FEMA also resorted to a series of

transparently irrational and unlawful evaluation maneuvers ████████████.  2M, a

certified 8(a) and HUBZone minority-owned small disadvantaged business, proposed █████

████████████████████████████████████████████████

████████████████████████████  Despite this

████████████████, FEMA inexplicably ███████████████

████████████████████████████████████████

█████  Moreover, when FEMA conducted discussions as part of its corrective action in response

to 2M's first protest, ████████████████████████████████

████████████████████████████████████████

Despite ████████████████████  FEMA not only ███████████████

3

██████████████████████████████

████████████████████████████████████████

████████, but ████████████████████████████████████████████

████████████████████████████████████████████. To further

torpedo 2M's chance of award ██████████████████████████████

████████████████████████████████████████████████████

████████████████and, thus, depriving 2M of the meaningful discussions to which it was

entitled.

     7.     Any one of these deficiencies, alone, would have rendered FEMA's proposal

evaluation, best value determination, and source selection decision irrational and unlawful.

Taken together, it is undeniable that FEMA's award decision cannot stand.

     8.     If the aforementioned flaws were not enough, FEMA also circumvented its legal

obligations to refer VPC to the Small Business Administration ("SBA") for a Certificate of

Competency determination, based on its inability to comply with FAR 52.219-14, the limitation

on subcontracting and ██████████████████████████████████████

████████ These actions not only constitute grounds to set aside the contract award to VPC, but

they underscore the flawed nature of the procurement.

     9.     Had FEMA conducted the procurement in a manner that was lawful, rational, and

consistent with the RFP, as it was required to do, VPC's proposal would have been eliminated

from the competition and 2M's proposal would have been deemed as offering the best value to

the government.  As a result, in this action 2M seeks, among other things, declaratory and

injunctive relief.

## PARTIES

     10.     2M is limited liability company registered in the state of Texas with its principal

office located at 1521 N. Cooper St., Suite 600, Arlington, Texas 76011.  As required to be

████████████████████████████████████████

████████████████████████████████████████████████

eligible for a contract under the RFP, 2M is a certified small business under the SBA's 8(a) program. It also is a certified HUBZone minority-owned small disadvantaged business. 2M specializes in providing research, program evaluations, statistical consulting, and program support-related services to federal agencies.

11.    The defendant is the government, acting through FEMA, which is headquartered at 500 C St. SW, 3rd Floor, Washington, D.C. 20472.

### JURISDICTION

12.    This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Dispute Resolution Act.

### STANDING

13.    2M is an "interested party" under 28 U.S.C. § 1491(b)(1) because it is an actual offeror whose direct economic interest was adversely affected by FEMA's unlawful, irrational actions during this procurement, including but not limited to, its failure to properly implement the corrective action and eliminate VPC's proposal for its failure to comply with FAR 52.219-14, its improper evaluation of 2M's and VPC's proposals, and its subsequent erroneous award of a contract to VPC.

14.    But for FEMA's errors identified herein, 2M would have been awarded the contract.

### STATEMENT OF FACTS

**A.    Overview of the Procurement**

15.    FEMA issued the RFP on May 9, 2016, seeking proposals to provide technical and administrative support for FEMA's administration of various grant programs, including Assistance to Firefighters Grants ("AFG"), Fire Prevention and Safety Grants ("FP&S"), and

Staffing for Adequate Fire and Emergency Response ("SAFER") grants. RFP § C.1.0. The awardee would assist FEMA's administration of these grants by providing: technical subject matter expertise to support the AFG helpdesk; administrative tasks associated with grant awards, administration, and closeout; and technical evaluation panel review support. *Id.* § C.1.2.

16.     The RFP contemplated the award of a firm, fixed price contract for a total period of four years and five months, including option periods. *Id.* §§ B.2, C.1.4.1, F.2. Competition was restricted to small business concerns certified by the SBA for participation in the SBA's 8(a) Program. *Id.* § I.10 (FAR 52.219-18). Work was categorized under NAICS Code 541611, Administrative Management and General Management Consulting Services, which incorporated a small business size standard of $15 million.

**B.      The RFP's Instructions for Proposals**

17.     The RFP instructed offerors to submit proposals in two volumes, one for the technical proposal and one for price. *Id.* § L.4.3.1. The required contents and evaluation scheme for each volume were as follows.

18.     Technical proposals were to address four factors, in the following order of importance: (1) Work Plan and Management Approach; (2) Past Performance; (3) Staffing Plan & Key Personnel; and (4) Quality Control Plan. *Id.*; *see also* RFP § M.3.5 (noting order of importance for technical factors). For each factor, the RFP provided specific instructions, set forth evaluation criteria that would be considered, and defined adjectival ratings that would be assigned.

19.     The first and most important technical factor for proposals encompassed two subfactors: Work Plan and Management Approach. For the Work Plan subfactor, offerors were to fully describe how they proposed to achieve the requirements set forth in the Performance

Work Statement ("PWS") incorporated into the RFP as Section C. *Id.* § L.4.4.2. Offerors were required to include specific and detailed information that was "complete enough to demonstrate the Offeror has a thorough understanding of the requirements in the PWS." *Id.* Specifically, each offeror was expected to address each PWS objective, with reference to "skill levels, quantity of resources and methods of operation required for each contract period of performance (transition period, base period, and option periods)." *Id.* Among other things, to ensure a match between price and proposed performance method, the RFP required offerors to "describe the proposed allocation of resources in work breakdown structure format that is consistent with the price proposal (i.e., distribution of staff, types of labor, categories, subcontractors, etc.)." *Id.*

20.    Under the Management Approach subfactor, offerors were asked to demonstrate their "ability to direct and control the operation of this requirement both programmatically and on a daily basis in an efficient and cost effective manner." *Id.* Proposals for this subfactor were to include:   copies of current organizational charts, lines of authority and supervision; a description of the personnel in a position of authority over the technical and management entities; an indication of how the contract would fit into the organization's overall business plan; a discussion of schedule controls, project cost accounting and tracking, and management of multiple work order assignments; and "a detailed discussion on how any subcontracted work will be managed and integrated to ensure efficient and effective services are provided."   RFP § L.4.4.2.

21.    For the Past Performance factor, offerors were instructed to submit up to three client references related to prior projects in which the offeror performed as a prime or subcontractor. *Id.* § L.4.4.3.1. All three references were required to pertain to "contracts of a similar size, scope, and nature to the scope of work identified in the PWS." *Id.* At least one of

the three client references was required to be a reference for the proposed prime contractor. *Id.* Additionally, offerors were asked to provide a narrative description of relevant projects in the offeror's experience, with relevant contracts defined as "those contracts ongoing or completed that are of comparable magnitude and complexity to those described in Section C, the PWS." *Id.* §§ L.4.4.3.1.1, L.4.4.3.2. Narratives were to include "dates, locations, scope of work, contract type, contract value, types and numbers of workers, problems encountered and their solutions, and noteworthy successes or accomplishments." *Id.* § L.4.4.3.2. Contractors who did not have relevant experience as defined by the RFP were instructed to submit a statement to that effect. RFP § L.4.4.3.2.

22.     The third technical factor, Staffing Plan & Key Personnel, required offerors to describe how they intended to staff the contract to meet the PWS requirements. *Id.* § L.4.4.4. As to the staffing component of this factor, the Solicitation required a "description of how the Offeror will recruit, train, retrain and otherwise maintain a qualified work force for this requirement as well as the proposed plan to supervise and coordinate its staff." *Id.* Details required for this description included "the number, skill mix, levels of expertise and qualification for the proposed positions" as well as "duties and responsibilities for each position proposed." *Id.* Offerors were also asked to demonstrate that "the proposed staff will have the necessary skills and expertise necessary for successful contract performance." *Id.*

23.     The Key Personnel component required the offeror to identify and present resumes of personnel meeting the minimum qualifications set forth in the PWS. *Id.* With respect to Key Personnel proposed, the proposal was required to demonstrate the proposed person understood the program scope and objectives and had relevant experience.   RFP

§ L.4.4.4. Offerors were also instructed to "demonstrate an understanding of the importance of assigning experienced, key personnel in the completion of the contract." *Id.*

24.     The final technical factor, Quality Control Plan, required offerors to show that they had "policies and procedures [to] ensure compliance with the contract requirements in a timely and accurate manner; [and a] method of documenting and enforcing quality control procedures of both the prime contractor and any subcontractors including inspection and acceptance and identification of quality control indicators and methods of correcting any found deficiencies." *Id.* § L.4.4.5.

25.     Price proposals were to be submitted in a separate volume detailing estimated prices for the transition period, base period, and each option period. *Id.* § L.4.5.1. Pricing was to be presented in a format provided by the RFP for each Contract Line Item ("CLIN"). *Id.* Each period of performance included a CLIN for labor and a CLIN for other direct costs ("ODCs"), materials, and travel. *Id.* The RFP provided plug numbers for the CLINs for ODCs, materials, and travel so that offerors would use the same figures for these CLINs, but it allowed offerors to propose a percentage for Material Handling (M&H) that would be applied to cover indirect costs. RFP § L.4.5.1.

26.     Price proposal instructions regarding the CLINs for labor were open-ended and required the offeror to exercise discretion on the basis of its knowledge and experience. Offerors were instructed to provide a fully burdened rate for each labor category proposed, the number of full-time equivalent ("FTEs") employees proposed, and the total number of hours. *Id.* The only guidance as to the likely number of FTEs required was a table depicting the historical level of effort. *Id.* § C, Attach. B. The historical level of effort for this contract required 48 full time employees. *Id.*

C.      **The RFP's Evaluation and Award Criteria**

27.     FEMA's evaluation process for the technical factors involved assigning Strengths

and Weaknesses and issuing an adjectival rating for each factor and for the technical volume as a

whole.  The RFP defined Strengths and Weaknesses as follows:

| Definitions | For evaluation purposes the following definitions apply |
|---|---|
| Significant Strength | A *significant strength* is defined as an element of a proposal which significantly exceeds a requirement of the solicitation in a way that is very beneficial to the Government |
| Strength | A *strength* is defined as an element of a proposal which exceeds a requirement of the solicitation in a beneficial way to the Government. |
| Weakness | A *weakness* is defined as a flaw in a proposal that increases the chance of unsuccessful performance |
| Significant Weakness | A *significant weakness* is a flaw in a proposal that appreciably increases the risk of unsuccessful contract performance |
| Deficiency | A *deficiency* is defined as a material failure of an offer or quotation to meet a Government requirement or a combination of significant weaknesses in an offer or quotation that increases the risk of unsuccessful contract performance to an unacceptable level. |

*Id.* § M.3.7.

28.     Adjectival ratings for technical proposals overall and for the Work Plan and

Management Approach factor were as follows:

| Rating | Definition |
|---|---|
| Superior | . . .[3] demonstrates an excellent understanding of the requirements and an approach that significantly exceeds performance or capability standards. Proposal has exceptional strengths that will significantly benefit the Government and risk of unsuccessful performance is very low. |
| Good | Proposal demonstrates a good understanding of the requirements and an approach that exceeds performance or capability standards. Proposal has one or more strengths that will benefit the Government and risk of unsuccessful performance is low. |
| Satisfactory | Proposal demonstrates an understanding of the requirements and an adequate approach that meets performance or capability standards. Proposal presents an acceptable solution with strengths and weaknesses that are offsetting, or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |
| Marginal | Proposal demonstrates a shallow understanding of the requirements and an approach that only marginally meets performance or capability standards necessary for minimal but acceptable contract performance. The risk of unsuccessful performance is high. |
| Unsatisfactory | Proposal fails to meet requirements and one or more deficiencies exist for which correction would require a major revision or redirection of the proposal. A contract cannot be awarded with this proposal. |

*Id.* §§ M.3.7, M.4.1.3.

29.     The RFP stated that FEMA would apply nearly identical adjectival ratings to the

Staffing Plan & Key Personnel factor, except that ratings would specifically take into account

"the structure and academic, technical, and professional qualifications of key personnel and

sufficiency of proposed personnel." *See* RFP § M.4.3.2.

---

[3] A non-substantive difference in wording of the Superior rating for application to the "Overall Technical proposal" or the Work Plan and Management Approach is omitted here for the sake of brevity. *See* RFP §§ M.3.7, M.4.1.3.

11

30.     Past Performance ratings were assigned based on the following adjectival definitions:

| Rating | Definition |
|---|---|
| Neutral | No relevant performance record is identifiable upon which to base a meaningful performance rating. A search was unable to identify any relevant past performance information for the offeror, key personnel, or subcontractors. This is neither a negative or positive assessment. |
| Superior | Based on the offeror's past performance record, essentially no doubt exists that the offeror will successfully perform the required effort. |
| Satisfactory | Based on the offeror's past performance record, it is likely that the offeror will successfully perform the required effort[.] |
| Unsatisfactory | Based on the offeror's past performance record, it is not likely that the offeror will successfully perform the required effort. |

*Id.* § M.4.2.5.

31.     Factor 4 – Quality Control Plan was rated on an Acceptable/Unacceptable basis. *Id.* § M.4.4.2.

32.     The price evaluation was to begin with an evaluation of total price, arrived at by taking the sum of prices for the base period and all option periods, including the six-month option period permitted by FAR 52.217-8. *Id.* § M.4.5.3. FEMA also committed to reviewing price for fairness and reasonableness "using one or more of the techniques defined in FAR 15.404." *Id.* § M.4.5.1. Finally, FEMA also stated it would determine whether a price proposal was "unrealistically low or unbalanced as to price." *Id.* § M.4.5.2.

33.     The RFP indicated that an award would be made on a best value basis in accordance with the tradeoff process set forth in FAR Part 15.101-1. RFP § M.1. FEMA

planned to consider Strengths and Weaknesses and select the offer that represented the best value to the government. *Id.* § M.2. The RFP made clear that FEMA would conduct a balancing analysis to weigh offerors' technical and price advantages. It also made clear that technical advantages would be significantly more important in that analysis than a price advantage. Specifically, the RFP provided that, for conducting the tradeoff analysis, the relative importance of price and non-price factors were as follows:

- Work Plan and Management Approach is the most important factor and significantly more important than Past Performance, Staffing Plan & Key Personnel, and Quality Control Plan;

- Past Performance is more important than Staffing Plan & Key Personnel and Quality Control Plan;

- Staffing Plan & Key Personnel is more important than Quality Control Plan;

- Price is the least important factor and when the non-price factors are combined, the nonprice factors are significantly more important than the price factor.

*Id.* § M.3.5.

### D.   **FEMA's Initial Award of the Contract to VPC**

34.   On September 29, 2016, 2M received notice that VPC had been awarded the contract. 2M immediately requested a debriefing, which was provided in writing on October 7, 2016. The debriefing provided a minimal amount of information, but disclosed that ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████   The following ratings were assigned ████████

████████████████████████████ :



**E.      Protest of FEMA's First Award to VPC and FEMA's Corrective Action Announcement**

35.      On October 12, 2016, 2M submitted a bid protest to the GAO, challenging

FEMA's award of the contract to VPC.  That protest raised a number of issues with FEMA's

procurement and award process, including FEMA's best value determination, its failure to make

an award consistent with the technical evaluation criteria stated in the RFP, the inferiority of

VPC's technical proposal, VPC's unrealistic pricing, and that VPC was not a responsible

contractor and was ineligible for the award for failing to comply with the limitation on

subcontracting clause set forth at FAR 52.219-14.

36.      GAO dismissed the protest on December 6, 2016, finding that FEMA's

announcement that it would take corrective action rendered the protest academic.  GAO noted

that FEMA indicated its intent to do the following as part of its stated corrective action:

> (1) re-evaluate the past performance factor, (2) review compliance
> with the limitation on subcontracting under FAR 52.219-14, (3)
> decide whether to award with or without discussions and conduct
> price evaluation as necessary, and (4) issue a new technical source
> selection evaluation board consensus report and a source selection
> decision document.

*2M Research Servs., LLC*, B-413993 *et al.*, Dec. 6, 2016, 2017 CPD ¶ 203 at 1.

37.    2M subsequently sought and received GAO's recommendation that 2M's protest grounds had been clearly meritorious and that 2M was entitled to recover all costs of filing and pursuing its protest. FEMA recently reimbursed 2M ▮▮▮▮▮▮▮ for these expenses.

38.    FEMA's announced corrective measures corresponded to serious flaws in VPC's proposal that were identified in the course of the GAO protest and that called into question VPC's eligibility to compete, as well as FEMA's determination of its ▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and determination that the proposal represented the best value to the government.

39.    Publicly available information on the Federal Procurement Data System ("FPDS") establishes that VPC had no relevant contracts that could serve as past performance references under the RFP at the time it submitted its proposal. It also has no identifiable experience with grants administration.

40.    Publicly available information also shows that VPC lacks any of the resources or staff necessary to manage a $28 million contract with up to 48 full-time employees. Indeed, FPDS data shows that as of September 2017, VPC has three employees and $295,444 in annual revenue. Ex. C, VPC FPDS Report, Sept. 25, 2017. These issues would have undermined VPC's ability to submit a technically acceptable proposal under both the Work Plan and Management Approach and Staffing Plan & Key Personnel factors. They would have also made impossible VPC's ability to comply with FAR 52.214-19 or to be deemed a responsible offeror for purposes of receiving award of this contract.

41.    Finally, FEMA's corrective action announcement specifically stated that it would "review compliance with the limitation on subcontracting under FAR 52.219-14." *2M Research Servs., LLC*, 2017 CPD ¶ 203 at 1. The referenced limitation on subcontracting at FAR 52.219-

15

14 states that a small business prime contractor may not subcontract more than 50 percent of the value of labor on a service contract. FEMA's decision to review compliance with this provision — in the face of a protest regarding a contract award to a small business prime contractor that lacked the capacity to manage the contract — is indicative that VPC's original proposal proposed to provide more than 50 percent of the value of labor through a large business subcontractor in contravention of FAR 52.219-14.

42.    All of the above problems affecting VPC's proposal were subject to review in FEMA's corrective action and would have required a substantial rewrite of VPC's proposal to correct.

**F.    FEMA's Corrective Action Re-Evaluation**

43.    On December 13, 2016, 2M received a notification that FEMA was re-evaluating proposals submitted in response to the RFP. FEMA began implementing the corrective action soon thereafter.

44.    According to counsel, FEMA did not create any documents indicating its plans for the corrective action. It did not prepare any instructions, notes, or schedules in anticipation of the corrective action. Instead, any planning that occurred took place behind closed doors with counsel, insulated from review by the attorney-client privilege.

45.    The limited documentation that has been preserved indicates that FEMA's first step was the promised review of compliance with the limitation on subcontracting. FEMA's first such review was consistent with 2M's GAO protest position and found that VPC █████████

█████████████████████████████████████████████████████

46.     According to counsel, FEMA did not prepare any documents, notes, or other instructions discussing the outcome of this first review.  Any discussions of the review took place with counsel present, and FEMA has refused to share the content of such discussions.

47.     For reasons one can only surmise, FEMA next commissioned a second review of compliance with FAR 52.219-14.  This review also concluded that VPC ████████ ███████████████████████████████████████████████████████████ ███████████████████████████  However, this document referred to the matter as a ██████████████████

48.     The record contains no indication of why FEMA ████████████████ ████████████████████████████████████████ (which was consistent with 2M's protest position and GAO's informal decision).

49.     Sometime later (none of the documents are dated), FEMA created a third review of compliance with the limitation on subcontracting.  This revised compliance report contained columns for several compliance areas.  For VPC, █████████████████████████ █████████████████████████████████  However, ██████████ ███████████████████████████████████████████████████ █████████████████████

50.     FEMA's █████████████████████████████████████████ ██████████████████████████  was not reasonable.  As 2M's GAO protest pointed out, FEMA's first evaluation ████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████

██████████████████████████████████████████████████████

51.   FEMA's claim that ████████████████████████████████ rests on its understanding that VPC's ████████████████████████████████████ ████████████████████████████ This is inaccurate.  VPC's ████ proposal did not ████████████████████████████████████████████████████ ████████████ Thus, VPC's ████ proposal ████████████████████ ████████████████████████████████████

52.   Moreover, even if the ████ proposal had ████████████████ ████████████████████████████ ████████████████████████████ FEMA documented its conclusion that VPC's ████████████████ ████████ but the agency failed to assign the ████████ that should have resulted from this conclusion.

53.   FEMA took no action on its conclusion that VPC's proposal ████████ ████████████████ Nor did it make any assessment of whether ████████ ████████████████ was a ████████ Instead, FEMA proceeded to evaluate the proposal as if all of the issues raised in 2M's GAO protest did not exist.

54.   The sole evidence that FEMA completed any other steps in its corrective action re-evaluation is the consensus report of the Technical Source Selection Evaluation Board ("SSEB").

55.   With respect to 2M, the SSEB's evaluation report ████████████████ ████████████████████████████████████ The SSEB did ████████████████████████ but ████████████████████ ████████████████

18

████████████████████████████████████████

56.     The SSEB's evaluation report also ████████████████████████████ ████████████████████████████████████████████████████████████████ ███████ The SSEB ████████████████████████████████████████████████ ███████ notwithstanding its own conclusion that VPC's ███████████████ ████████████████████████████ Not only did the SSEB ███████████████ ████████ ; it ██████████████████████████████ .

57.     The SSEB also ███████████████████████████ ████████████████ ████████████████████████████████████████████████████████████████ Again, the SSEB ███████████████████████████████████████████████████ ████████████████████ As a result, there is no evidence of the agency's reasoning in this area.

58.     The SSEB did not ████████████████████ whether VPC ████████████ ███████████████ which would have been a ████████ under both the Work Plan & Management Approach and Staffing & Key Personnel factors. Instead, it ████████████ ████████████████████████████████████████ — even though VPC's inclusion in the competitive range had, supposedly, not yet been determined. In other words, FEMA decided to hold discussions with VPC to ████████████████ before it completed the evaluation that was intended to determine whether discussions would be held at all.

59.     In sum, FEMA ignored and downplayed ████████████████████████ ████████████████████ before including VPC in the competitive range, ████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ .

## G.    FEMA's Competitive Range Determination

60.    The day after the SSEB completed its revised evaluation, FEMA issued its competitive range determination on March 30, 2017.  The competitive range determination set forth FEMA's plan to compose a competitive range consisting of ▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *Id.* at AR 1293-1294.

61.    FEMA accepted all of the SSEB's evaluation conclusions.  For VPC, FEMA again merely noted that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅ Despite ▅▅▅▅▅▅▅▅▅ FEMA ▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅    ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅▅▅▅▅▅

62.    ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Had the SSEB or the Contracting Officer in the competitive range determination ▅▅▅▅▅▅▅ ▅▅▅▅▅▅▅▅▅ 2M would have been ▅▅▅▅▅▅▅▅▅ pursuant to the inclusion criteria that FEMA set forth. ▅▅▅▅▅▅▅▅▅ 2M was forced to compete with an offeror whose proposal should have been excluded.

## H.    FEMA's Evaluation of Revised Proposals

63.    FEMA initiated discussions with 2M in a letter dated May 2, 2017 that identified issues for proposal revision.  Ex. E, Letter from Maria Hayes, Contracting Officer, FEMA to 2M Research Services, LLC, Items for Discussion – Solicitation HSFE40-16-R-0002, Technical and Administrative Support Services for the Assistance to Firefights Grant (AFG) Program (May 2, 2017).

20



64.     The notification of items for discussion ▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  *Id.*

65.     On or about May 5, 2017, 2M responded to the notification ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  Ex. F, Letter

from 2M Research Services, LLC to  Maria Hayes, Contracting Officer, FEMA, Response to

Items for Discussion – Solicitation HSFE40-16-R-0002, Technical and Administrative Support

Services for the Assistance to Firefights Grant (AFG) Program (May 5, 2017).

66.     2M received no further communications from FEMA regarding items for

discussion.

67.     By letter dated May 10, 2017, FEMA requested that 2M submit final proposal

revisions, including revisions to aspects of the proposal that were not the subject of discussions,

by May 18, 2017.  On May 18, 2017, 2M submitted its final proposal revisions, ▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

68.     On September 22, 2017, 2M received notice that VPC had been again awarded

the contract.  2M immediately requested a debriefing, which was provided in writing on

September 27, 2017.  Ex. G, Letter from Maria Hayes, Contracting Officer, FEMA to 2M

Research Services, LLC, Post Award Debriefing – Solicitation HSFE40-16-R-0002, Technical

and Administrative Support Services for the Assistance to Firefights Grant (AFG) Program

(Sept. 27, 2017).

69.     The debriefing contained a nominal amount of information, but disclosed that

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬  *Id.*  ▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████   FEMA also ████████████████████████████████

███████████████████████████████████████████████████

████████████████   Nevertheless, FEMA ██████████████

████████████████   FEMA did, however, ██████████████

████████████████

70.   Regarding price, the debriefing stated that FEMA had derived a total evaluated price of ████████████ for 2M's proposal and a total evaluated price of ████████████ for VPC's proposal, ████████████████████ *Id.* at 4. Therefore, ████████████████████ ████████████████████████████████████████████████ the risk inherent in VPC's proposal remains unacceptably high, and VPC could not possibly have corrected the issues that render it ineligible for award as a threshold matter and ████████████ under several RFP criteria. FEMA took deliberate steps to minimize, if not obfuscate, 2M's vastly superior proposal ████████████████████

71.   2M initially challenged FEMA's unlawful reevaluation and procurement on October 2, 2017 at the GAO. It was docketed as GAO No. B-413993.5. Pursuant to 4 C.F.R. § 21.11(b), GAO dismissed 2M's second protest on October 23, 2017, because another offeror has protested the same procurement at the Court of Federal Claims. The related case is *Elias Group, LLC v. United States*, No. 1:17-cv-01490-RHH (Fed. Cl. filed Oct. 10, 2017).

███████████████████████████████████████████████████

## COUNT I — FEMA Arbitrarily and Capriciously Waived Its Own Competitive Range Inclusion Criteria for VPC.

72.    2M realleges paragraphs 1 through 71 as if fully set forth herein.

73.    In establishing a competitive range, an agency must evaluate proposals and make awards based on all of the evaluation factors set out in the solicitation. Moreover, the agency must apply its criteria for inclusion of proposals in the competitive range reasonably.

74.    FEMA's competitive range determination set forth ground rules under which ███

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

75.    FEMA did not reasonably evaluate VPC's proposal in establishing the competitive range, ███████████████████████████ Had FEMA

███████████████████████████████████████ VPC would have been excluded under FEMA's criteria for inclusion in the competitive range, leaving 2M as the only remaining offeror in line for award.

76.    Specifically, FEMA ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

77.    The RFP includes FAR 52.219-14, which required VPC to provide at least 50 percent of the value of labor through its own employees. ████████████████████

██████████████     Instead, ██████████████████████████████

████████████████████████████████████████████████

23

██████████████████████████████████

██████████████████████████████████████████████████



████████████ FEMA unreasonably ████████████

78.   ██████████████ involved a related but distinct failure that FEMA ████████████████████████ The Work Plan & Management Approach factor required offerors to present their work breakdown structure, which was required to match the price proposal. The RFP stated that FEMA would review the work breakdown structure and compare it to the price proposal to assess the Work Plan & Management Approach factor. FEMA's corrective action re-evaluation determined that VPC ████████

██████████ Nevertheless, FEMA also unreasonably ████████████

████

79.   Had FEMA reasonably evaluated VPC's proposal and applied its own competitive range criteria consistently, VPC would have been eliminated and 2M ███████████ ████████████████.

### COUNT II — FEMA's Final Evaluation of VPC's Revised Technical Proposal Was Irrational, Unlawful, and Inconsistent with the Terms of the Solicitation for the Staffing Plan & Key Personnel Factor

80.   2M realleges paragraphs 1 through 71 as if fully set forth herein.

81.   An agency's evaluation of proposals must be rational and compliant with applicable statute, regulation, and procedure. It must not be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and it must be consistent with the evaluation criteria set forth in the solicitation. Here, FEMA's evaluation of VPC's revised technical

proposal remained irrational, unlawful, and inconsistent with the terms of the Solicitation with respect to three of the four evaluation factors.

82.     FEMA could not have rationally rated VPC's proposal anything but Unsatisfactory under the Staffing Plan & Key Personnel factor.

83.     First, the RFP's instructions and evaluation criteria stated that offerors should include "a detailed description on how the Offeror will staff the contract in order to successfully meet all requirements of the PWS . . ." and "a description of how the Offeror will recruit, train, retrain and otherwise maintain a qualified work force for this requirement as well as the proposed plan to supervise and coordinate its staff." RFP § L.4.4.4.  The RFP stated that FEMA would consider "the offeror's ability to meet the requirements of the PWS with emphasis on" among other things "the offeror's hiring procedures, retention strategies . . . and a record of recruiting and retention success for similar contracts." *Id.* § M.4.3.

84.     FEMA did not evaluate VPC's proposal consistently with these terms.  FEMA ignored the fact that VPC has virtually no employees, rendering any staffing, recruitment, and retention plan entirely theoretical and risky.

85.     Public disclosures indicate that this issue was not corrected in VPC's revised proposal.  VPC's FPDS report indicates that VPC has just three employees. Ex. C, VPC FPDS Report, Sept. 25, 2017.  VPC's website similarly lists only five individuals, two of whom are merely consultants, who openly advertise their affiliation with other businesses, Vision Planning & Consulting, LLC, http://www.visionplanningandconsulting.com/people (last visited Oct. 29, 2017).  It is plainly irrational to conclude that a company with only three employees and two consultants can be relied upon to staff a contract requiring up to 48 full-time employees.

86.     Second, the RFP clearly contemplated an analysis of whether the proposal was reasonable with respect to the offeror's recruiting capabilities and intent to hire incumbent employees.  It stated FEMA would:

> [D]etermine the offeror's ability to meet the requirements of the PWS with emphasis on the offeror's hiring procedures, retention strategies, skill mix, levels of expertise and qualifications, distribution and effective use of the work force, hiring plans and recruiting methods, *percentage of employees from the incumbent contractor whom the offeror expects to retain, and a record of recruiting and retention success for similar contracts.*

RFP § M.4.3.1 (emphasis added).

87.     VPC does not have the required experience and record of success in recruiting and retaining a similar sized staff and does not have a reasonable plan to recruit employees to fill the massive gaps in its staffing.  VPC has never employed a significant number of people and therefore has no experience or record of success in recruiting them.  FEMA improperly discarded the RFP criteria and ignored this fact to award ████████ to VPC.

88.     Had FEMA recognized and understood the numerous problems with VPC's proposal under the Staffing Plan & Key Personnel factor, the only rational rating it could have assigned would have been Unsatisfactory, precluding an award to VPC altogether.  At a minimum, it is inconceivable that VPC merited an overall technical ████████ given its ████████ under this factor alone.  This rating makes clear that the evaluation was not in accordance with the factors set forth in the Solicitation, in violation of Competition in Contracting Act ("CICA"), 41 U.S.C. § 3701(a), and is thus unlawful and irrational.

## COUNT III — FEMA's Evaluation of 2M's Technical Proposal Was Irrational, Unlawful, and Inconsistent with the Terms of the Solicitation

89.     2M realleges paragraphs 1 through 71 as if fully set forth herein.

90.     Not only must agency evaluations of proposals be rational, compliant with applicable statute, regulation, and procedure, and consistent with the evaluation criteria set forth in the solicitation, but the FAR requires "integrity, fairness, and openness" in procurements conducted under the Federal Acquisition System, FAR 1.102(b)(3), and specifically prohibits government personnel involved in the acquisition from engaging in conduct that favors one offeror over another, FAR 15.306(e)(1).   An agency's procurement decision is arbitrary and capricious if it treats offerors disparately.   Therefore, when a solicitation contains evaluation factors, those factors must be applied evenly to each proposal submitted.

**FEMA Evaluated 2M's Proposal ▮▮▮▮▮▮▮▮▮▮▮▮**
**▮▮▮▮ Arbitrarily, Unlawfully, and Inconsistently with the Solicitation.**

91.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2M's proposal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮[4] Furthermore, 2M ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] Interestingly, the FEMA contracting activity has requested that the incumbent contracting team of Cabezon and McKing provide proprietary details regarding their technical approach in order to assist with transition and so that the new contractor — VPC — can implement this approach. Presumably, if VPC were qualified and competent to perform the work, it would not need access to the technical approach proposed by 2M.

██████████████████████████████████████████████████████████████

████████████████████

92.     The extent to which FEMA's evaluation is arbitrary and unlawful is striking when compared to the first evaluation FEMA performed on 2M's proposal.    Prior to FEMA's corrective action, ██████████████████████████████████████████████████████

████████████     When FEMA initiated discussions after taking corrective action, ███████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████     Ex. E, Letter from Maria Hayes, Contracting Officer, FEMA to 2M Research Services, LLC, Items for Discussion – Solicitation HSFE40-16-R-0002, Technical and Administrative Support Services for the Assistance to Firefights Grant (AFG) Program (May 2, 2017) at 2.

93.     ████████████████████████████████████████████████████████

████████████████████████████████████████████     Ex. F, Letter from 2M Research Services, LLC to  Maria Hayes, Contracting Officer, FEMA, Response to Items for Discussion – Solicitation HSFE40-16-R-0002, Technical and Administrative Support Services for the Assistance to Firefights Grant (AFG) Program (May 5, 2017) at 1.   2M's response included a thorough explanation of its approach and an amendment to relevant portions of its proposal to clarify that it understands the requirement.   *Id.*

94.     Despite that ████████████████████████████████████████████

FEMA's corrective action evaluation ████████████████████████████████████

████████████████████     This decision was irrational and plainly motivated by a desire to justify

28

██████████████████████████████████████████████████████████████

████████████████████████████████████████ █████████ ████████████████████

the award to VPC.  The debriefing explicitly stated that FEMA ████████████████

████████████████████████████████████████ At the same time, FEMA mysteriously

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ Moreover,

it is necessarily irrational that VPC, █████████████████████████████████████

████████████████████████████████████████████████████ while 2M,

████████████████████████████████████████████████████████████████████████

█████████

    95.    Had FEMA simply ████████████████████████████████████████████

████████████████████████████████████████ ████████████████████████████

████████ under the plain terms of the RFP.  FEMA's ████████████████████████

████████ is arbitrary on its face.  FEMA's determination ████████████████████████

was not supported █████████████████████████████ and was inconsistent with

2M's ████████████████████████████ and FEMA's ████████████████████

████████ and thus was inconsistent with the Solicitation.  The Court should find that FEMA's

evaluation in this regard cannot stand.

    **FEMA Evaluated 2M's Proposal** ████████████████████████ **Arbitrarily,**
    **Unlawfully, and Inconsistently with the Solicitation.**

    96.    ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

29

████████████████████████████████████████████████████████████████████████

████   ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████

97.   2M's original and revised proposals ██████████████████

███████████████████████████████████   2M's   ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████

98.   FEMA's evaluation unreasonably ████████████████████

████████   finding that ████████████████████████████████████

█████████████████████████████████████████   Ex. G, Letter from Maria

Hayes, Contracting Officer, FEMA to 2M Research Services, LLC, Post Award Debriefing –

Solicitation HSFE40-16-R-0002, Technical and Administrative Support Services for the

Assistance to Firefights Grant (AFG) Program (Sept. 27, 2017) at 2-3.

99.   This assessment was inconsistent with the information provided with 2M's

proposal and completely at odds with the actual facts.   First, ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████   Plainly, ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ Second, 2M's ██████ proposal was ████████████

█████████████████████████████████████████ FEMA's

decision ████████████████████████████████ was irrational,

arbitrary, and inconsistent with the solicitation.

100.    FEMA's evaluation █████████████████████████ was not

consistent with the RFP and was not rational.  FEMA's decision therefore cannot stand.

## COUNT IV– FEMA Failed to Provide Meaningful Discussions to 2M, Thereby Violating Applicable Procurement Regulations

101.    2M realleges paragraphs 1 through 71 as if fully set forth herein.

102.    When an agency engages in discussions with an offeror, the discussions must be

sufficiently detailed to lead an offeror to the areas of its proposal requiring amplification or

revision.  FAR 15.306(d).  This means that the agency must notify the offeror of deficiencies,

significant weaknesses, and adverse past performance information.  ██████████████

████████████████████████████████████████████████

██████████████████

103.    In this case, FEMA initiated discussions on May 2, 2017.  While FEMA's

discussions ████████████████████████████ FEMA ██████

████████████████████████████████████████████████

FEMA had also █████████████████████████████████████

████████████████ Instead, FEMA simply ██████████████████

████████████████ The agency therefore failed to engage in meaningful discussions and

meet its obligations under the FAR.

31

██████████████████████████████████████
████████████████████████████████████████

104.   Had FEMA notified 2M that ████████████████████████

████████████████ 2M could have ████████████████████████

████████████████████████████████████████████████████████

████████████████ ████████████████████████████████████████

████████████

■ ████████████████████████████████████████████
████████████████

■ ████████████████████████████████████████████
████████████████

■ ████████████████████████████████████████████
██████████

■ ████████████████████████████████████████████
████████████████

105.   ████████████████████████████████████████████

████████████████████████████████ 2M ████████████████████

████████████████████████████████ Without the benefit of any

warning in discussions, 2M ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

106.   FEMA's failure to notify 2M that ████████████████████

████████████████████████████████████████████ amounted to

unlawful action and irrational.

32



## COUNT V – FEMA's Overall Source Selection Decision Lacked a Rational Basis

107.    2M realleges paragraphs 1 through 71 as if fully set forth herein.

108.    Both the RFP and the FAR call for a best value determination pursuant to a cost-technical tradeoff process, with the RFP stating that price would be the least important factor in this determination. FAR 15.101-1; RFP § M.3.5.

109.    FEMA's overall source selection decision was irrational because its best value determination was arbitrary and capricious and premised on faulty technical and price realism conclusions. ████████████████ was illusory; 2M, in fact, offered the better technical approach. Further, VPC's proposed price was unrealistic and could not have been deemed ███. ███████████ . Accordingly, FEMA's best value determination in favor of VPC is necessarily based on flawed inputs, rendering the award decision irrational and invalid.

## COUNT VI — FEMA Acted Unlawfully in Failing to Eliminate VPC from the Competition or Refer VPC to the Small Business Administration for A Certificate of Competency Determination for Failing to Comply with the Contract's Limitation on Subcontracting

110.    2M realleges paragraphs 1 through 71 as if fully set forth herein.

111.    The FAR requires a contracting officer to refer a contractor to the SBA for a Certificate of Competency review when questions of responsibility arise. *See* FAR 19.601(a). In particular, "[w]hen a solicitation requires a small business to adhere to the limitations on subcontracting, a contracting officer's finding that a small business cannot comply with the limitation shall be treated as an element of responsibility and shall be subject to the COC process." FAR 19.601(d).

112.    The SBA may then only issue a Certificate of Competency to an offeror that is responsible with respect to all elements of responsibility, including, but not limited to, capability,

competency, capacity, credit, integrity, perseverance, tenacity, and limitations on subcontracting, for the purpose of receiving and performing a specific Government contract. *See* FAR 19.601(a).

113.   As described above, VPC lacks, minimally, the relevant capability, competency, capacity, and credit to perform this contract. The contracting officer's failure to refer VPC to the SBA violated the FAR, was unlawful, and was irrational.

114.   The RFP incorporates by reference FAR 52.219-14, Limitations on Subcontracting, which provides that the prime contractor's personnel must make up at least 50 percent of the cost of labor on a service contract. *See* FAR 52.219-14(c)(1). With no employees available to work on this contract full time, VPC plainly cannot comply with this limitation.

115.   FEMA was aware of these issues as a result of, among other things, the outcome of 2M's first protest. As a result, the Contracting Officer should have referred VPC's proposal to the SBA for a Certificate of Competency determination.

### COUNT VII — Permanent Injunctive Relief

116.   2M realleges paragraphs 1 through 71 as if fully set forth herein.

117.   Injunctive relief is available when:  (1) the plaintiff has succeeded on the merits; (2) the plaintiff will suffer irreparable harm absent injunctive relief; (3) the balance of hardships favors the grant of injunctive relief; and (4) the public interest favors a grant of injunctive relief.

118.   2M will lose the opportunity to compete fairly for a contract under the RFP and thus lose its ability to earn a profit under the proposed contract unless the award decision is set aside. Reimbursement of 2M's protest and proposal preparation costs would be insufficient to compensate 2M for the irreparable and permanent harm it will suffer in the absence of an injunction.

119.    The balance of hardships favors injunctive relief.  FEMA is not injured by an order that requires it to follow essential procurement regulations.  2M, on the other hand, is a small business that will be permanently harmed by the loss of business unless FEMA's decision

120.    The public interest favors injunctive relief to correct the errors FEMA has committed in this case.  This Court has recognized an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statues and regulations.

### PRAYER FOR RELIEF

WHEREFORE, 2M prays that the Court:

    A.    Declare that FEMA's re-evaluation of VPC's original proposal and its competitive range determination were irrational, unlawful, and inconsistent with the terms of the Solicitation;

    B.    Declare that FEMA's evaluation of VPC's revised technical proposal was irrational, unlawful, and inconsistent with the terms of the Solicitation;

    C.    Declare that FEMA's evaluation of 2M's revised technical proposal was irrational, unlawful, and inconsistent with the terms of the Solicitation;

    D.    Declare that FEMA failed to engage in meaningful discussions with 2M;

    E.    Declare that FEMA unlawfully failed to disqualify VPC because of its failure to comply with the limitation on subcontracting set forth in FAR 52.219-14, thus, rendering it ineligible for award;

    F.    Declare that FEMA's best value determination and source selection decision were irrational;

    D.    Set aside the award to VPC and permanently enjoin FEMA from awarding the contract to VPC and VPC from performing the contract;

    E.    Award 2M attorney fees and other reasonable expenses; and

    F.    Grant such other relief as it deems appropriate.

Respectfully submitted this 12th day of December, 2017.

/s/ Jessica C. Abrahams
Jessica C. Abrahams
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Tel:  (202) 496-7204
Fax:  (202) 496-7756
jessica.abrahams@dentons.com

*Counsel for 2M Research Services, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2017, I electronically filed the foregoing via the Court's CM/ECF system, which automatically generates a notice of filing to all Counsel of Record in this matter.

/s/ Jessica C. Abrahams