# United States Court of Federal Claims

No. 17-1638 C
Filed: July 25, 2018
Reissued: September 6, 2018[1]

<table>
<tr><td>

2M RESEARCH SERVICES, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

VISION PLANNING & CONSULTING, LLC,

Defendant-Intervenor.

</td><td>

Post-Award Bid Protest; Competitive Range; RCFC 52.1; Judgment on the Administrative Record; Administrative Record

</td></tr>
</table>

*Jessica Catherine Abrahams*, Drinker, Biddle & Reath, Washington, DC, for plaintiff.

*Nathanael Brown Yale*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*Patrick Trent Rothwell*, PilieroMazza PLLC, Washington, DC, for defendant-intervenor.

## OPINION AND ORDER

***SMITH*, Senior Judge**

This post-award bid protest comes before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, 2M Research Services, LLC ("2M"), challenges the decision of the U.S. Department of Homeland Security, Federal Emergency Management Agency ("FEMA" or "Agency") to award Solicitation No. HSFE40-16-R-0002 ("Solicitation" or "RFP") to defendant-intervenor, Vision Planning & Consulting, LLC ("VPC"). The Solicitation seeks technical and administrative support services for the Federal Assistance to Firefighters Program, which provides competitive grants to fire departments, emergency medical organizations, and fire prevention organizations. In its Complaint, 2M asserts that the Agency's

---

[1] An unredacted version of this opinion was issued under seal on July 25, 2018. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

award of the contract to VPC was arbitrary and capricious, contrary to law, and without a rational basis.  Second Amended Complaint (hereinafter "2nd Am. Compl.") at 4.  For the following reasons, plaintiff's Motion for Judgment on the Administrative Record is granted, and defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record are denied.

## I.    Background

Plaintiff is a certified small business under the Small Business Administration's ("SBA") 8(a) Business Development program, which specializes in providing research, program evaluations, statistical consulting, and program support-related services to federal agencies.  2nd Am. Compl. at 5.  On May 9, 2016, FEMA issued the RFP, seeking proposals to provide technical and administrative support for FEMA's administration of various grant programs, including those awarded to fire departments.  Administrative Record ("AR") at 210.  The RFP contemplated the award of a firm, fixed price contract for a total performance period of four years and five months, including option periods, and restricted competition to small business concerns certified by the SBA for participation in its 8(a) Business Development program.  *See* AR 277 (referencing Federal Acquisition Regulation ("FAR") 52.219-18, codified at 48 C.F.R. § 52.219-18 (2017)).  In addition to its certification under SBA's 8(a) program, plaintiff is also a certified HUBZone minority-owned, small disadvantaged business.  AR 45.

Pursuant to the RFP, offerors were to submit their technical and price proposals in separate volumes.  AR 317-18.  Technical proposals were to address four factors in the following order of importance: (1) Work Plan and Management Approach; (2) Past Performance; (3) Staffing Plan and Key Personnel; and (4) Quality Control Plan.  AR 318.  The Quality Control Plan is not at issue here.  The first and most important factor, Work Plan and Management Approach, instructed offerors to fully describe how they would meet the requirements set forth in the RFP's Performance Work Statement ("PWS"), and to demonstrate their ability to control the operation of such requirements in an efficient and cost effective manner.  AR 319.  The second factor, Past Performance, required each offeror to submit up to three client references related to prior projects in which it performed as either the prime contractor or as a subcontractor.  AR 320.  Third, the Staffing Plan and Key Personnel factor instructed offerors to describe how they intended to staff the contract to meet the PWS requirements.  AR 322.  For each technical factor, FEMA assigned strengths and weaknesses to aspects of technical proposals that either exceeded or fell short of the RFP's requirements.  AR 333.  FEMA then issued an adjectival rating for each factor and for the technical proposal as a whole, ranging from Superior to Unsatisfactory.  AR 332, 336-37.  The award was to be made in accordance with the best-value tradeoff process set forth in FAR 15.101-1, by balancing offerors' technical and price advantages.  AR 330.  Notably, the RFP stipulated that the Work Plan and Management Approach was "significantly more important" than the other technical factors, and technical factors, when combined, were "significantly more important" than price.  AR 331-32.

On September 29, 2016, FEMA awarded the contract to VPC.  AR 1866.  Per 2M's request, FEMA issued a debriefing, reflecting its overall rating of VPC's technical proposal as "Superior" and 2M's as "Good."  AR 1864-65, 1872.  On October 12, 2016, plaintiff submitted a bid protest to the U.S. Government Accountability Office ("GAO"), challenging FEMA's award

to VPC, arguing that VPC lacked the experience and resources to serve as prime contractor. AR 44-45. Specifically, 2M asserted that "obvious red flags" should have led FEMA to assign deficiencies to and reduce the ratings of VPC's proposal, disqualify VPC from competition under FAR 52.219-14, and refer VPC to the SBA for a responsibility determination. Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support (hereinafter "P's MJAR") at 8. Upon provision of VPC's complete proposal and FEMA's relevant evaluation results, plaintiff submitted a supplemental protest, alleging that VPC violated limitations on subcontracting under FAR 52.219-14 and lacked the requisite past performance history, both of which FEMA ignored in its evaluation of VPC. AR 57.

On December 6, 2016, the GAO dismissed plaintiff's protest, declaring that FEMA's representation that it would take corrective action rendered the protest academic. AR 840-41 (noting FEMA's intent to take the following corrective action: (1) reevaluate the Past Performance factor; (2) review compliance with FAR 52.219-14; (3) decide whether to award with or without discussions and conduct price evaluation as necessary; and (4) issue a new technical source selection evaluation board consensus report and source selection decision document). Still, the GAO declared that 2M was entitled to recover more than $90,000 in expenses incurred in pursuit of 2M's protest, which FEMA has since reimbursed. AR 840.

On December 13, 2016, FEMA notified 2M that it had reevaluated the proposals in response to 2M's GAO protest, relying in part on reports from the Technical Source Selection Evaluation Board ("SSEB") and FEMA's price evaluator. AR 1184. Subsequently, on March 30, 2017, FEMA issued its competitive range determination, consisting of fair and reasonably priced proposals with technical ratings of "Good" or higher, which resulted in the inclusion of only 2M and VPC's offers within the competitive range. AR 1290, 1293-94. Plaintiff submitted its final proposal revisions, reducing its price and including additional past performance, on May 18, 2017. AR 1333. On September 22, 2017, VPC was again awarded the contract. AR 1658. In its debriefing, FEMA disclosed that VPC and 2M had maintained their overall technical ratings of "Satisfactory" and "Good," respectively, but that 2M's Past Performance rating had fallen from "Satisfactory" to "Neutral." AR 16624. Additionally, FEMA maintained 2M's rating of "Good" for Work Plan and Management Approach, despite any weaknesses identified under such factor, and eliminated the proposal strengths indicated in FEMA's initial 2016 evaluation. AR 1624-25. Further, FEMA derived a total evaluated price of plaintiff's proposal as $██████████, and the total evaluated price of VPC's proposal as $██████████. AR 1684, 1293-96, 1300-01.

On October 31, 2017, plaintiff filed a Complaint with this Court, alleging that FEMA irrationally and unlawfully awarded the contract to VPC. Complaint (hereinafter "Compl.") at 1. On November 16, 2017, plaintiff filed an Amended Complaint. On December 12, 2017, plaintiff filed a second Amended Complaint. *See generally* 2nd Am. Compl. On December 15, 2017, plaintiff filed a Motion for Judgment on the Administrative Record, alleging that FEMA's award of the contract to VPC was arbitrary, capricious, and contrary to law. P's MJAR at 1-2. On January 5, 2018, VPC filed its Response and Cross-Motion. *See generally* Defendant-Intervenor Vision Planning & Consulting, LLC's Opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record and Memorandum in Support (hereinafter "DI's CMJAR"). Simultaneously, the government filed its

Response and Cross-Motion. *See generally* Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "D's CMJAR"). On January 12, 2018, 2M filed its Reply in support of its Motion for Judgment on the Administrative Record, and Response to defendant and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record. *See generally* Reply to Defendant and Defendant-Intervenor's Cross-Motions for Judgment on the Administrative Record (hereinafter "P's Reply"). On January 19, 2018, defendant and defendant-intervenor filed their replies in support of their cross-motions for judgment on the administrative record. *See generally* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record (hereinafter "D's Reply"); Defendant-Intervenor Vision Planning & Consulting, LLC's Reply in Support of its Cross-Motion for Judgment on the Administrative Record (hereinafter "DI's Reply"). On January 24, 2018, plaintiff filed a Motion to File a Sur-Reply. *See generally* Motion for to File Sur-Reply. Neither the government nor defendant-intervenor saw the necessity of such a Sur-Reply, but they did not object to its admission. This case was transferred to Senior Judge Loren A. Smith on May 30, 2018. The Court held Oral Argument on this matter on July 9, 2018. The motions are fully briefed and ripe for review.

## II.     Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

The Tucker Act also affords this Court with jurisdiction over bid protest actions. 28 U.S.C. § 1491(b). This Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Notably, agency procurement actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 28 U.S.C. § 1491(b)(4). However, "[t]he arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). Agencies, and contracting officers in particular, are "'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process.'" *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010) (quoting *Impresa*, 238 F.3d at 1332).

Under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), a party may file a motion for judgment upon the administrative record for the Court to assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance

with the legal standards governing the decision under review.  *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 585 (2006)).  On a motion for judgment upon the administrative record, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record.  RCFC 52.1; *Bannum*, 404 F.3d at 1354.  Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  *Id.* at 1355.  When a protestor claims that an agency's decision violates a statute, regulation, or procedure, the protestor must show that such alleged violation was "clear and prejudicial."  *Impresa*, 238 F.3d at 1333.  The Court will "interfere with the government procurement process 'only in extremely limited circumstances.'"  *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 223 (2005) (quoting *CACI, Inc.-Fed. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989)).  "If the [C]ourt finds a reasonable basis for [an] agency's action, the [C]ourt should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.*"  Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989).  The Court cannot substitute its judgment for that of an agency, even if reasonable minds could reach differing conclusions.  *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

### III.    Discussion

#### A.  Competitive Range

In its Motion for Judgment on the Administrative Record, plaintiff asserts that FEMA's inclusion of VPC in the competitive range was irrational and inconsistent with the Solicitation, as it ignored deficiencies in VPC's original proposal.  In establishing a competitive range, an agency must evaluate proposals and make awards based on all evaluation factors set forth in the relevant solicitation.  FAR 15.306(c).  A Contracting Officer ("CO") does not have discretion to ignore an evaluation factor in determining the inclusion of an offeror in a competitive range.  *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70, 114-15 (2006), *on reconsideration in part*, 75 Fed. Cl. 406 (2007).

Plaintiff argues that the ground rules for inclusion indicated that "[o]nly those offerors who received at least 'Good' overall technical ratings and fair and reasonable prices *prior to discussions* [would be] considered among the 'most highly rated proposals' and [] included in the competitive range."  P's MJAR at 2 (emphasis in original); AR 1293.  Plaintiff further contends that "[h]ad the SSEB reasonably evaluated VPC's original proposal based on the parameters set forth in the Solicitation, VPC would have been excluded from the competitive range because the record clearly shows that VPC's original proposal was deficient."  *Id.* at 22.  In making this argument, plaintiff asserts that the SSEB unreasonably failed to assign the following two deficiencies in VPC's proposal, which resulted in FEMA improperly including VPC in the competitive range: (1) VPC proposed performing Prime labor at 40%, which violated the limit on subcontracting; and (2) VPC's work breakdown structure did not match its price proposal, which was a key requirement of the Solicitation.  P's MJAR at 22-23.

The limitation on subcontracting clause provides that by submitting "an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the

case of a contract for services, [a]t least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern." 48 C.F.R. § 52.219-14(c)(1). Furthermore, "[a]n offer fails to satisfy a [limitation on subcontracting] provision if it is 'readily apparent' that its proposal fails to show that an offeror *would* comply with the requirements of the [limitation on subcontracting] clause." *Caddell Constr. Co. v. United States*, 129 Fed. Cl. 383, 404 (2016) (quoting *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1038-40 (Fed. Cir. 2009)) (emphasis provided in *Centech*).

The government responds by arguing that FEMA reasonably included VPC in the competitive range because "when it is unclear whether a proposal complies with the subcontracting clause, that offeror can be given an opportunity to cure that defect during discussions." D's CMJAR at 23 (citing *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 527-28 (2005), *aff'd* 163 F. App'x 889 (Fed. Cir. 2006)). Both the government and defendant-intervenor have misapplied the holding in *Chapman*, which is distinguishable from the case at bar. In *Chapman*, it was unclear whether the awardee's initial proposal was facially compliant with the subcontracting clause. *Chapman*, 63 Fed. Cl. at 524. Here, no such ambiguity exists. It seems clear to this Court that VPC's initial proposal, which indicated that the Prime contractor would only be completing 40% of the work, was noncompliant with the limitation on subcontracting, in violation of FAR 52.219-14. AR 1187, 1232. As such, VPC should not have been included in the competitive range.

Plaintiff further contends that FEMA's Source Selection Authority ("SSA") "failed to document any type of independent judgment" during the technical evaluation, in violation of FAR 15.308. P's MJAR at 35. The FAR permits the SSA to "use reports and analyses prepared by others, [but] the source selection decision shall represent the SSA's independent judgment." FAR 15.308. The FAR also requires that the rationale for the SSA's decision be documented. *Id.* The government argues that "the SSEB's findings were rational and well-documented and, accordingly, the SSA's reliance on those findings was not improper." DI's CMJAR at 23. The Court is not persuaded that a reiteration of the SSEB's findings can be classified as independent judgment. As such, the SSA's decision to ignore the non-responsiveness of VPC's bid and include it in the competitive range was arbitrary and capricious.

## B. Staffing

Plaintiff next contends that FEMA's technical evaluation of the revised proposals was arbitrary and capricious, because FEMA ignored negative information that should have decreased VPC's score, as well as positive information that should have increased 2M's score. P's MJAR at 25. Specifically, plaintiff asserts that VPC's revised proposal deserved an "Unsatisfactory" rating under the Staffing Plan and Key Personnel factor, rather than a "Superior" rating, as VPC lacked both the staff and experience required to perform the contract. *Id.* at 26. In making this argument, plaintiff alleges that the award to VPC was irrational, as "[i]t is not reasonable to conclude that a company that does not currently have employees and has never before recruited a similar number of them has a 'Superior,' risk-free staffing plan." P's MJAR at 25.

The Administrative Procedure Act allots great deference to agency technical evaluations of an offeror's proposal.  *See e.g.*, *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 297 (2006) ("[T]echnical ratings . . . involve discretionary determinations of procurement officials that a court will not second guess."); *Omega World Travel, Inc. v. United States*, 54 Fed. Cl. 570, 578 (2002) ("It is well settled that [COs] are given broad discretion with respect to evaluation of technical proposals.").  However, an agency's technical evaluations must be reasonable and consistent with the relevant evaluation criteria.  *See Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377, 386 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004) ("It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation.").  As plaintiff points out, the RFP indicated that FEMA would consider "the offeror's ability to meet the requirements of the PWS with emphasis on . . . the offeror's hiring procedures, retention strategies, . . . *and a record of recruiting and retention success for similar contracts*."  P's MJAR at 26; AR 336 (emphasis in P's MJAR).

Plaintiff's argument that VPC's Staffing Plan and Key Personnel rating was arbitrary and capricious is bifurcated.  First, plaintiff argues that VPC had only three employees at the time of the award and has never employed the requisite number of people under the Solicitation, "rendering any staffing, recruitment, and retention plan entirely theoretical and risky."  P's MJAR at 26.  Second, plaintiff points out that VPC's proposal was silent as to its experience and capabilities in the recruiting, hiring, and employee retention areas, instead relying on the capabilities of Cadmus, its large business subcontractor.  *Id*. at 27.  Plaintiff further contends that FEMA was well aware of these deficiencies, as 2M raised them throughout the GAO protest, but that FEMA nevertheless ignored these deficiencies at the conclusion of that protest and failed to provide an explanation for its determination that VPC's Superior Staffing Plan and Key Personnel rating was rational.  *Id*. at 28.

The government alleges that its actions were neither arbitrary nor capricious because the Solicitation does not require "that the offeror itself demonstrate recruiting experience, [instead of relying] upon its subcontractor for that experience."  D's CMJAR at 32.  The government further argues that "[o]fferors were not required to have a certain number of individuals already employed prior to submitting a proposal, and indeed, the solicitation indicated that many employees would likely be hired from the incumbent contractor."  *Id*. (citing AR 129).  The Court is not persuaded by this argument.

While the Solicitation did not expressly prohibit an offeror from using subcontractors to aid in staffing and recruiting, it  requires each offeror to describe "the offeror's ability to meet the requirements of the PWS" and to demonstrate "a record of recruiting and retention success for similar contracts."  AR 336.  In order to receive a Superior rating for Staffing and Key Personnel, the offeror must demonstrate the following:

> [A]n excellent understanding of the requirements and an approach that significantly exceeds performance or capability standards.  Given the structure and academic, technical, and professional qualifications of key personnel and sufficiency of proposed personnel, offeror's proposal has exceptional strengths that will significantly benefit the Government and risk of unsuccessful performance is very low.

AR 336.  While VPC's staffing and key personnel plan may be theoretically sufficient, it seems clear to this Court that VPC's proposal did not meet the most basic of requirements in order to receive a "Superior" rating—it was not almost devoid of risk.  Assigning a "Superior" rating to an offeror operating out of a private residence, with only three employees, one of whom was a full-time student, and limited relevant past experience, regardless of the skills of its subcontractor, is directly contrary to the requirements of the Solicitation.  As such, the Court has no choice but to determine that VPC's Superior ranking was arbitrary and capricious.

### C.  Pattern of Unfairness

While this Court considers agency deference to be of the utmost importance, it cannot ignore the record before it.  In its Motion for Judgment on the Administrative Record, plaintiff both overtly and impliedly alleges that it received unequal treatment throughout the course of this procurement.  When looking at the Administrative Record as a whole, it becomes clear to this Court that FEMA repeatedly overlooked deficiencies in VPC's proposals, relaxed Solicitation requirements, and amended its Technical Evaluations in favor of VPC.

This Court has long held that "[a] bid is responsive if it conforms with the requirements of the solicitation."  *Mack Trucks, Inc. v. United States*, 6 Cl. Ct. 68, 70 (1984) (citing *Yachts America, Inc. v. United States*, 3 Cl. Ct. 447, 449 (1983); *Keco Industries, Inc. v. United States*, 492 F.2d 120, 1203 (Ct. Cl.1974)).  "Responsiveness is determined by the terms of a bid at the time bids are opened. Nonresponsive bids must be rejected to avoid unfairness to other contractors."  *Mack Trucks*, 3 Cl. Ct. at 71.  "Otherwise, a bidder would be encouraged to submit a nonresponsive bid and engage in the type of bid manipulation that the responsiveness requirement is designed to prevent."  *Id.* (citing *Toyo Menka Kaisha, Ltd. v. United States*, 597 F.2d 1371, 1377 (1979)).

VPC's original proposal did not conform to the Solicitation's requirements, specifically the limitation on subcontracting and staffing plan.  As such, VPC should not have been included in the competitive range.  It is well established that an "agency's failure to follow the terms of its own Solicitation and selection of an offeror based upon different requirements than those imposed upon the only other offeror are quintessential examples of conduct which lacks a rational basis."  *CliniComp Int'l v. United States*, 117 Fed. Cl. 722, 741 (2014) (quoting *Hunt Building Co., Ltd. v. United States*, 61 Fed. Cl. 243, 273 (2004) (citation omitted)); *see also CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 490 (2013) ("It is well-established that a 'contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.'" (quoting *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 383 (2003))).

FEMA continued in its unfair and unequal treatment by failing to provide a rational explanation for VPC's inclusion in the competitive range, instead opting to re-evaluate the proposals to further tip the scales against 2M.  AR 1627.  Such a decision smacks of disparate treatment, and, while that issue is not expressly raised by the plaintiff, this Court cannot ignore that when something "looks like a duck, walks like a duck, and quacks like a duck, then it's a duck."  *Zebel, LLC v. United States*, 135 Fed. Cl. 47, 64 (2017) (quoting *S.I. Stud, Inc. v. United*

*States*, 24 F.3d 1394, 1396 (Fed. Cir. 1994) (Plager, J., dissenting)).  FEMA relaxed its requirements in including VCP in the competitive range, despite the clear violation of the limitation on subcontracting and arbitrary Staffing Plan rating.  FEMA also provided no cognizable rationale for its unequal treatment of bidders, and "[an] agency's failure to articulate any basis for its disparate treatment . . . renders [a] procurement fundamentally irrational and invalid."  *CliniComp*, 117 Fed. Cl. at 743.  As such, this Court finds FEMA's decision to award the contract to VPC to be arbitrary and capricious.

### D.  Injunctive Relief

Pursuant to the Tucker Act, the Court may award "any relief that the [C]ourt considers proper, including declaratory and injunctive relief" in bid protest cases.  28 U.S.C. § 1491 (b)(2) (2012).  As plaintiff succeeds on the merits, this Court need only analyze the following three factors: (1) "whether the plaintiff will suffer irreparable harm if this [C]ourt withholds injunctive relief," (2) "whether the balance of hardships to the respective parties favors the grant of injunctive relief," and (3) "whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004) (citations omitted).

The first element this Court must consider is whether denial of the injunction would result in irreparable harm to the plaintiff.  If injunctive relief were denied, 2M would be denied "the opportunity to recoup profits and to benefit from a lawful procurement process."  *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 378 (2009).  "Such loss of profit stemming from a lost opportunity to compete on a level playing field has been found sufficient to constitute irreparable harm."  *Id.* at 378-79 (citing *United Payors & United Providers Health Servs. v. United States*, 55 Fed. Cl. 323, 333 (2002); *MVM, Inc. v. United States*, 46 Fed. Cl. 137, 142-43 (1999)).  As such, this prong of the injunctive analysis weighs strongly in plaintiff's favor.

The next element of injunctive relief the Court must analyze is "whether the balance of hardships leans in the plaintiff's favor," when weighed against the harm to the government.  *Overstreet Elec. Co., Inc. v. United States*, 47 Fed. Cl. 728, 744 (2000).  Here, the government makes no real argument that the balance of hardships weighs in its favor.  D's MJAR at 45.  Defendant-intervenor argues that a permanent injunction is drastic, as FEMA has already delayed the award for over a year.  DI's CMJAR at 29.  The Court notes that "only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests."  *Overstreet*, 47 Fed. Cl. at 744 (citing *Ellsworth Associates, Inc. v. United States*, 45 Fed. Cl. 388, 399 (1999) (*rev'd on other grounds*)).  As the incumbent contractor is currently performing the work covered by the Solicitation, this is not such an "exceptional case."  *Overstreet*, 47 Fed. Cl. at 744 (citing *Bean Dredging Corp. v. United States*, 19 Cl. Ct. 561, 583 (1990)).

Finally, "[i]t is axiomatic that the public has an interest in honest, open, and fair competition in the procurement process."  *Cincom Systems, Inc. v. United States*, 27 Fed. Cl. 266, 269 (1997).  Furthermore, "public interest is manifest in ensuring that the Government closely adhere to the requirements of the procurement regulations."  *Scanwell Lab., Inc. v. Schaffer*, 424 F.2d 859, 866-67 (D.C. Cir. 1970).  Conversely, "[i]t is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial

infringement upon the agency's discretion." *Aero Corp. v. United States*, 38 Fed. Cl. 237, 242 (1997).  While this Court has determined that "the public's interest lies in preserving the integrity of the competitive bidding process," *Overstreet*, 47 Fed. Cl. at 744, additional facts are required in order for this Court to formulate final relief.

At present, the Court has determined that a permanent injunction is warranted.  A permanent injunction should only be as broad as the harm it seeks to remedy.  As such, this Court defers its decision on what kind of injunctive relief to grant, pending further discussions with the parties.  A Status Conference Order shall be forthcoming, to further discuss what form the relief shall take.

## IV.     Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is **GRANTED**.  Defendant and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are **DENIED**.  Additionally, plaintiff's Motion for leave to file a Sur-Reply is **GRANTED**.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2]     This opinion shall be unsealed, as issued, after August 8, 2018, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.